IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANIEL WALTER BARFIELD, §
§
Petitioner, §
§
V. § No. 3:13-cv-2737-M-BN
§
WILLIAM STEPHENS, Director § (Consolidated With:
Texas Department of Criminal Justice § No. 3:13-cv-2739-M-BN;
Correctional Institutions Division, § No. 3:13-cv-2740-M-BN;
§ No. 3:13-cv-2742-M-BN)
Respondent. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Daniel Walter Barfield, a Texas prisoner, has filed an application for

writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below,

the application in these consolidated cases should be denied.

**Background**

Petitioner was charged by indictment in four separate criminal actions with

aggravated assault with a deadly weapon. *See State v. Barfield*, Nos. F07-59076-T,

F07-73761-T, F07-73762-T, & F07-73777-T (283d Dist. Ct., Dallas Cnty., Tex.). Each

indictment alleged one prior conviction for sentence enhancement purposes. On August

7, 2008, Petitioner pleaded guilty as charged to the offense and true to the

enhancement paragraph in each action. *See* Dkt. No. 8-2 at 12-14; Dkt. No. 8-3 at 23-

25; Dkt. No. 8-4 at 12-14; Dkt. No. 8-5 at 10-12. Although the offense of aggravated

assault with a deadly weapon carries a statutory maximum of life imprisonment,

Petitioner's plea agreements capped his punishment to forty years' imprisonment. *See id.* And, on September 18, 2008, Petitioner was sentenced to concurrent terms of thirty years' imprisonment as to each action.

On October 14, 2008, the Fifth Court of Appeals of Texas dismissed Petitioner's direct appeals for want of jurisdiction, after noting that Petitioner "waived his right to appeal in conjunction with the plea agreements as to the capped punishment." *Barfield v. State*, Nos. 05-08-01307-CR, 05-08-01310-CR, 05-08-01308-CR, & 05-08-01309-CR, 2008 WL 4559979, at *1 (Tex. App. – Dallas Oct. 14, 2008, no pet.). Petitioner neither sought discretionary review in the Texas Court of Criminal Appeals, *see* Dkt. No. 13-1, nor petitioned the United States Supreme Court for a writ of certiorari, *see* Dkt. No. 3 at 3.

But Petitioner did file applications for state writ of habeas corpus on July 29, 2009. The state trial court, sitting in habeas review, held evidentiary hearings on October 18, 2012, November 5, 2012, and November 12, 2012 and, on February 25, 2013, issued findings of fact and conclusions of law as to the four issues that Petitioner raised: ineffective assistance of counsel, sufficiency of the indictment, use of perjured testimony by the prosecution, and the voluntariness of the guilty plea. *See* Dkt. No. 8-11 at 48-73. The state habeas court concluded that Petitioner's application should be denied. *See id.* at 73. And, on May 29, 2013, the Texas Court of Criminal Appeals denied Petitioner's applications without written order, on the findings of the trial court, after a hearing. *See Ex parte Barfield*, WR-79,277-01, WR-79,277-02, WR-79,277-03, & WR-79,277-04 (Tex. Crim. App. May 29, 2013).

Petitioner filed his federal habeas petitions on or about July 11, 2013. And, on July 19, 2013, the Court consolidated his four cases. *See* Dkt. No. 5.

### Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an

unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785-86 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no farther." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show

that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s]

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)
(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies
not only to explicit findings of fact but also "to those unarticulated findings which are
necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*,
274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 131 S. Ct. at 784
("[D]etermining whether a state court's decision resulted from an unreasonable legal
or factual conclusion does not require that there be an opinion from the state court
explaining the state court's reasoning"). "The presumption is especially strong when
the state habeas court and the trial court are one in the same," as they were in this
case. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (collecting cases); *see also
Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility
determinations made on the basis of conflicting evidence are entitled to a strong
presumption of correctness and are 'virtually unreviewable' by the federal courts."
(quoting *Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999))).

## Analysis

Petitioner attempts to present five grounds for relief in this Court. The four
grounds properly exhausted in the state proceedings are addressed in turn below. But
to the extent Petitioner presents a fifth ground for relief – for double jeopardy based
on the use of a prior conviction as a sentencing enhancement – not explicitly raised in
the state proceedings, *see* Dkt. No. 3 at 10, the Court should consider – and reject –
that ground for relief as without merit.

AEDPA "retained" the "'total exhaustion' requirement as a prerequisite for a

district court to grant a petition" established by *Rose v. Lundy*, 455 U.S. 509, 510 (1982). *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005) (citing 28 U.S.C. § 2254(b)(1)(A); *Rhines v. Weber*, 544 U.S. 269 (2005)). But, "consistent with its goal of providing for the speedy resolution of federal petitions, AEDPA provides that applications may be denied on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'" *Id.* (quoting 28 U.S.C. § 2254(b)(2)); *accord Strickland v. Thaler*, 701 F.3d 171, 174-75 (5th Cir. 2012). Because Petitioner's unexhausted claim lacks merit, the Court should proceed to review it despite Petitioner's failure to exhaust. *See, e.g., Laroussi v. Stephens*, No. 3:13-cv-1410-D, 2014 WL 3778158, *7 (N.D. Tex. July 31, 2014).

The basis for Petitioner's claim of double jeopardy appears to be the use of a prior conviction as a sentencing enhancement. But "it is well established that sentencing enhancements for prior convictions do not implicate the Double Jeopardy Clause." *United States v. Linares-Tabora*, Criminal No. H-04-0150-03, Civil Action No. H-07-3068, 2007 WL 3118184, at *5 (S.D. Tex. Oct. 22, 2007). "Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are common place in state criminal laws, do not change the penalty imposed for the earlier conviction." *Id.* (quoting *Nichols v. United States*, 511 U.S. 738, 747 (1994)).

## I.    Petitioner's challenge to the indictments (Ground Two) is procedurally barred.

Petitioner asserts that the indictments in the four cases were defective because,

in each, the enhancement paragraph alleged a prior conviction for aggravated robbery instead of robbery. *See, e.g.*, Dkt. No. 3 at 7.

The state habeas court considered this ground and found that, although Petitioner is correct, he had "notice of the error prior to entering his guilty pleas in the four cases against him," "failed to file any objection or motion complaining of the defect," and was thus "procedurally barred from raising this claim for the first time on application for writ of habeas corpus." Dkt. No. 8-11 at 56-57. That court further found that Petitioner "would have been subject to the same range of punishment whether he had previously been convicted of a robbery or aggravated robbery," *id.* at 57-58 (citing Tex. Penal Code §§ 12.32, 12.42(b)), and therefore concluded that, even if Petitioner's claim could be considered for the first time on habeas review, "it has no merit," *id.* at 58.

Under Texas law, "defects, errors and irregularities of either form or substance in an indictment or information must be raised by pretrial objection or be waived in postconviction proceedings." *Ringer v. Quarterman*, No. 4:07-cv-501-A, 2009 WL 35059, at *6 (N.D. Tex. Jan. 6, 2009) (citing Tex. Code Crim. Proc. art. 1.14(b) (Vernon 2005)). This state procedural default rule, which is what the state habeas court relied on to deny relief on this ground, is "firmly established and regularly followed by Texas courts" and is, thus, "an adequate state ground to support the court's denial of habeas relief and is independent of federal law." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *see also Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006) ("A federal habeas court 'will not consider a claim that the last state court rejected on the

basis of an adequate and independent state procedural ground.'" (quoting *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir.2004))). Consequently, because Petitioner has failed to demonstrate cause and prejudice or a miscarriage of justice, his claim is procedurally barred. *See Coleman*, 501 U.S. at 750.

Moreover, even if this claim was not procedurally barred, the Court should nevertheless dismiss it as meritless because "[t]he sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir.1994) (citing *Branch v. Estelle*, 631 F.2d 1229 (5th Cir.1980)).

> For an indictment to be "fatally defective," no circumstances can exist under which a valid conviction could result from facts provable under the indictment. *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988).
>
> State law determines whether an indictment is sufficient to vest jurisdiction in the state trial court. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). Under Texas law, "indictments charging a person with committing an offense, once presented, invoke the jurisdiction of the trial court and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance." *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). [Even the] "failure to allege an element of an offense in an indictment or information is a defect of substance," as opposed to one of jurisdiction. *Studer v. State*, 799 S.W.2d 263, 268 (Tex. Crim. App.1990). As acknowledged in *Studer*, if omitting an element from an indictment is a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element. *Id.*

*Fields v. Thaler*, Civil Action No. H–11–0515, 2012 WL 176440, at *6-*7 (S.D. Tex. Jan. 20, 2012).

The indictments at issue in Petitioner's cases all charged him with the "commission of an offense, which was sufficient to vest jurisdiction in the trial court";

thus, any defect in those indictments is substantive, not jurisdictional, and "Petitioner would not be entitled to habeas relief under this issue." *Id.* at *7 (citations omitted).

Since Petitioner challenges those indictments based on improper enhancements, the undersigned further notes that his pleas of true waive challenges to those enhancements. *See Randle v. Scott*, 43 F.3d 221, 226 (5th Cir. 1995) (citing *Scott v. Maggio*, 695 F.2d 916, 922 (5th Cir. 1983); *Long v. McCotter*, 792 F.2d 1338, 1340 (5th Cir. 1986)); *see also Payne v. Johnson*, No. 3:96-cv-2101-G, 1998 WL 664973, at *5 (N.D. Tex. Sept. 21, 1998) ("A plea of 'true' or 'guilty' to an enhancement charge waives subsequent challenges to the validity of the prior conviction set forth in the indictment. Because of this waiver, Payne is not entitled to relief on this claim." (citations omitted)).

## II. Petitioner's guilty pleas were voluntary, knowing, and intelligent (Ground Four).

Petitioner argues that his guilty pleas in all four cases were involuntary because he claims to have been mislead by his counsel and coerced by the state trial court into an open plea deal. *See* Dkt. No. 3 at 8. Petitioner alleges that his counsel advised him that he would receive a life sentence if he went to trial but that counsel would get him a lower sentence following a guilty plea. Petitioner also alleges that the state trial judge informed Petitioner that he could receive as "little as a probation" if he entered an open plea.

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences."

*Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). A plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The United States Court of Appeals for the Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) the defendant's full understanding of the charges; and (3) the defendant's realistic appreciation of the consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir.1993). These core concerns are addressed by the admonishments contained in article 26.13 of the Texas Code of Criminal Procedure. *See, e.g.*, *Ojena v. Thaler*, No. 3:10-cv-2601-P-BD, 2011 WL 4048514, at *1 & n.1 (N.D. Tex. Aug. 25, 2011), *rec. adopted*, 2011 WL 4056162 (N.D. Tex. Sept. 12, 2011).

Prior to trial, Petitioner agreed to enter an open plea of guilty as charged in all four cases and pleaded true to the enhancement paragraph in each indictment. *See* Dkt. No. 8-2 at 12-14; Dkt. No. 8-3 at 23-25; Dkt. No. 8-4 at 12-14; Dkt. No. 8-5 at 10-12 (plea agreements and judicial confessions). The agreements informed Petitioner that the offenses to which he pleaded guilty all carry a statutory maximum of life imprisonment, but those plea agreements capped Petitioner's punishment to forty years' imprisonment. *See id.* Petitioner, his attorney, and the prosecutor signed a written plea agreement and judicial confession. *See id.* The plea agreements disclosed that the range of punishment for aggravated assault, a first degree felony, was between

five and 99 years or life in prison and a fine not to exceed $10,000. *See* Dkt. No. 8-2 at

12; Dkt. No. 8-3 at 23; Dkt. No. 8-4 at 12; Dkt. No. 8-5 at 10. As part of the plea

agreements, Petitioner waived the full panoply of his constitutional rights, including

his right to a jury trial, his right to confront and cross-examine witnesses, his right to

a speedy trial, and his privilege against self-incrimination. *See* Dkt. No. 8-2 at 12-13;

Dkt. No. 8-3 at 23-24; Dkt. No. 8-4 at 12-13; Dkt. No. 8-5 at 10-11.

By signing each plea agreement, Petitioner acknowledged that "my attorney has

explained to me, and I have read and I understand, all the foregoing admonitions and

warnings regarding my rights and my plea, and that my statements and waivers are

knowingly, freely, and voluntarily made with full understanding of the consequences."

Dkt. No. 8-2 at 13; Dkt. No. 8-3 at 24; Dkt. No. 8-4 at 13; Dkt. No. 8-5 at 11. Each

corresponding judicial confession also contained a provision stating that Petitioner did

"judicially confess that I committed the offense with which I stand charged exactly as

alleged in the indictment in this cause." Dkt. No. 8-2 at 14; Dkt. No. 8-3 at 25; Dkt. No.

8-4 at 14; Dkt. No. 8-5 at 12.

These representations by a defendant during plea proceedings carry a strong

presumption of verity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Hobbs*

*v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir.1985) (official documents, such as a written

plea agreement, "are entitled to a presumption of regularity and are accorded great

evidentiary weight"). In an attempt to overcome this presumption, Petitioner asserts

that his guilty pleas were coerced by his attorney and the trial judge. *See, e.g.*, Dkt. No.

3 at 8. But he fails to point to any evidence to either support his claims of coercion or

refute the representations he made in the plea agreements and judicial confessions. *See, e.g., Rico v. Quarterman*, No. 2:07-cv-243, 2009 WL 2015686, at *4-*5 (N.D. Tex. July 10, 2009) ("[B]ecause petitioner offers nothing more than his own statements in support of any potential argument that his guilty plea was not knowing and voluntary, and because the record very strongly supports the opposite of petitioner's position, i.e., that petitioner's plea was in fact knowing and voluntary, petitioner's contention that he entered into the guilty plea under the coercion of his attorney and not under his own free will must fail." (citing *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)); *see also Urseti v. Lynaugh*, 821 F.2d 1099, 1102 (5th Cir. 1987) (finding plea voluntary where attorney threatened to withdraw as counsel and warned his client he was likely to be convicted and sentenced to 99 years' imprisonment if he went to trial).

Most importantly, moreover, the state habeas court concluded– after the benefit of testimony from Petitioner's trial counsel, whom that court found to be "a credible person worthy of belief" – that Petitioner "failed to meet his burden in demonstrating that he did not fully understand the consequences of his plea." Dkt. No. 8-11 at 71-72. And Petitioner has not shown that this conclusion is either (1) contrary to, or an unreasonably application of, established Supreme Court precedent or (2) based on objectively unreasonable factual determinations. *See Medlinger v. Cockrell*, No. 3:00-cv-2566-H, 2003 WL 21448378, at *7 (N.D. Tex. Apr. 16, 2003) (where the petitioner failed to "overcome the presumption of correctness that attached to the credibility finding of the trial court" and "simply present[ed] self-serving assertions of coercion which [were] unsupported by the record and which contradict[ed] his statements in open court that

his guilty plea was freely and voluntarily made, and made only because [he was] guilty[,]" this court concluded, "[g]iven the totality of the circumstances, it [was] evident that petitioner fully understood the charges against him and the consequences of his plea" and, "[t]hus, his plea appear[ed] knowing, intelligent, and voluntary" (internal quotation marks and citation omitted)).

### III.   As to his ineffective-assistance-of-counsel claims (Ground One), Petitioner has not shown that the state court's application of the *Strickland* standard was unreasonable.

Petitioner argues that his state trial counsel was ineffective for (1) failing to object to the incorrect enhancement paragraphs in the indictments; (2) failing to present a defense or, more specifically, mitigating evidence during the sentencing phase; and (3) making light of Petitioner's Native American heritage/religion. *See* Dkt. No. 3 at 7. The state trial court considered, and made findings of fact and conclusions of law regarding, the same contentions, *see* Dkt. No. 8-11 at 50-55, and ultimately recommended that Petitioner's claims of ineffective assistance be denied, *see id.* at 55. The Texas Court of Criminal Appeals agreed.

The undersigned has reviewed the Petitioner's Sixth Amendment claims under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), as that test is (1) applied to guilty pleas, through *Hill v. Lockhart*, 474 U.S. 52 (1985), and (2) applied where, as here, a state court has adjudicated ineffective-assistance claims on the merits.

Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To

be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 133 S. Ct. 1584 (2013).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S. Ct. at 791. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have

had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 131 S. Ct. at 791. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 792 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Id.*

*Strickland* applies in the context of a guilty plea. *See Hill*, 474 U.S. at 57-58. But, in that context, proving *Strickland*'s "'prejudice' requirement" turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. This means that, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citations omitted).

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403, 1410 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 131 S. Ct. at 785; *see also id.* at 788 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, the AEDPA does not permit a *de novo* review of state trial counsel's conduct in these claims under *Strickland*. *See id.* at 785-86. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 785.

As to Petitioner's claim that his trial counsel was ineffective because he failed to object to the incorrect enhancement paragraphs in the indictments, Petitioner has not established *Strickland* prejudice by alleging that "he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead*, 37\

-17-

F.3d at 206. He has also not shown that the state habeas court's application of *Strickland* as to this issue was unreasonable. *See* Dkt. No. 8-11 at 52-55 (finding Petitioner failed to prove both *Strickland* prongs after noting, first, that counsel testified that the district attorney was aware of these errors and that the State would have corrected them had Petitioner gone to trial and, second, that, although the conviction in the enhancement was not an aggravated robbery, Petitioner did, in fact, have a separate prior conviction for the first degree felony of aggravated robbery).

Petitioner's claim that his counsel was ineffective during sentencing because he failed to present mitigating evidence – DNA evidence, photos of Petitioner's injury, evidence of his medical history of seizures, and a purportedly exculpatory letter from a co-defendant – also fails. Again, the state habeas court had the benefit of testimony from trial counsel concerning (1) the decision not to use DNA evidence during the sentencing hearing – "99 percent of the DNA hurt rather than helped us"; (2) the decision not to present the letter from co-defendant William Walters – who was interviewed by counsel, who learned Walters lied to police and, thus, concluded "his testimony was less than credible"; and (3) trial counsel's knowledge that Petitioner "had a small cut or injury on his hand as a result of the altercation that led to the charges in the underlying cases." Dkt. No. 8-11 at 53. Petitioner has not shown that that court's application of *Strickland* as to these issues – that is, the findings of no deficient performance and no prejudice – was unreasonable.

Petitioner also presents a conclusory allegation that his trial counsel was ineffective for making light of his Native American heritage and/or religion. This

unsupported claim is due to be summarily dismissed. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). To the extent that the claim is related to trial counsel's overall performance and whether that performance was in any way constitutionally ineffective, Petitioner has not shown that the state habeas court's application of *Strickland*, to conclude that Petitioner "failed to prove that [his trial counsel] rendered ineffective assistance," was unreasonable. Dkt. No. 8-11 at 55.

## IV. Petitioner has not established that the state court's findings concerning Kelsea Armstrong's testimony were unreasonable (Ground Three).

Petitioner alleges that State witness "Kelsea Armstrong lied on the witness stand by stating that she did not make a deal with the D.A.'s office regarding her statement or her testimony." Dkt. No. 3 at 12. Petitioner contends that the prosecution knew that this testimony was not true because, after his conviction, Armstrong informed him that the prosecution told her that, if she wrote a statement and "testified on" Petitioner, she would be let "out of jail." *Id.* As framed by the state habeas court, Petitioner "contends ... that Dallas County Assistant District Attorney Hector Valle suborned perjury when Kelsea Armstrong testified that she did not have a deal with the State in exchange for her testimony." Dkt. No. 8-11 at 58.

The Due Process Clause prohibits the use of perjured testimony to obtain a conviction. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *see also Black v. Collins*, 962 F.2d 394, 407 (5th Cir. 1992). In order to establish a due process violation

based on the use of perjured testimony, a habeas petitioner must prove that (1) the testimony was false; (2) the prosecutor knew it was false; and (3) the evidence was material. *See Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994); *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). False testimony is material if "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998) (quoting *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993)).

Here, although Armstrong refused to testify at the evidentiary hearing conducted by the state habeas court, that court heard from the two Assistant Dallas County District Attorneys who prosecuted Petitioner's cases, the then-Chief of the Gang Unit at the District Attorney's Office, a detective assigned to the Dallas Police Department's Gang Unit involved in the case against Petitioner, and Armstrong's defense attorney. *See* Dkt. No. 8-11 at 60-68. With the benefit of this testimony, including the ability to make credibility determinations as to each witness, the state habeas court made the following findings:

> This Court notes that it was aware that at the time Ms. Armstrong testified at [Petitioner's] punishment hearing she had not yet been sentenced in her case, and was likely hoping that her testimony would provide her with a favorable outcome.
>
> The Court finds that Ms. Armstrong's testimony was not material to the guilty finding in [Petitioner's] case because [Petitioner] entered a plea of guilty on August 7, 2008, which this Court accepted. Ms. Armstrong testified at [Petitioner's] punishment hearing on September 18, 2008.
>
> This Court finds that even if this Court had found Ms. Armstrong's testimony to be false, it was not material to the Court's decision regarding punishment. This Court was aware that Ms. Armstrong had a case

pending before this Court, in which she was going to plead guilty to the offense of aggravated robbery with a deadly weapon, and she was going to go "open" to this Court for punishment following her testimony in the Walters and Barfield cases. This Court was aware that Ms. Armstrong had told police she had not seen anything when originally interviewed, but later gave a statement and testified that she saw [Petitioner] with a knife. This Court was aware that Ms. Armstrong had been romantically involved with [Petitioner] at the time of the offense, but was no longer involved with him at the time she testified at [Petitioner] punishment hearing. This Court was sufficiently able to evaluate her credibility and weigh her testimony appropriately.

This Court finds that whether Ms. Armstrong had a deal in place with the State in exchange for a statement or testimony was not material to this Court's decision as to [Petitioner]'s punishment.

This Court finds that [Petitioner] has failed to prove his claim by a preponderance of the evidence.

*Id.* at 68-69.

Petitioner has not established that, even if Armstrong's testimony was false, her testimony was in any way material to his conviction or punishment. And, moreover, he has not established that, as to this issue, the state habeas court unreasonably applied federal law to the facts of this case. *See* 28 U.S.C. § 2254(d)(1).

## Recommendation

Petitioner's application for writ of habeas corpus in these consolidated cases should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: December 8, 2014

                                    _____

                                    DAVID L. HORAN
                                    UNITED STATES MAGISTRATE JUDGE